1  Kutak Rock LLP
   Geana M. Van Dessel
2  Geana.VanDessel@KutakRock.com
   510 W. Riverside Ave., Suite 800
3  Spokane, Washington 99201-0506
   Telephone: (509) 747-4040
4
   Attorneys for Defendant
5  Michael Van Tiger

6

7

8              UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF WASHINGTON
9
   UNITED STATES OF AMERICA,     | Case No. 4:20-CR-6010-SAB
10                               |
                    Plaintiff,   | Motion to Challenge K9 Alert and
11                               | Suppress Defendant's Statements and
         v.                      | Evidence
12                               |
   MICHAEL VAN TIGER,            | Hearing: Pretrial Conference
13                               | February 3, 2021, 11:00 a.m.
                    Defendant.   | Evidentiary Hearing & Oral
14                               | Argument Requested

15

16

17

18

19

20

21

22

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

## I.   Request for Relief

Mr. Vantiger's Fourth Amendment rights were violated when law enforcement used an illegal ruse to seize and detain him and the rental vehicle he was riding in with Ms. Gomez. His Fourth Amendment rights were also violated when he was seized without probable cause—when law enforcement relied on an unreliable K9 drug dog alert to assert probable cause to detain and question Mr. Vantiger and Ms. Gomez, and search their vehicle. Following an evidentiary hearing, the Court should exclude all statements made by Mr. Vantiger and Ms. Gomez to law enforcement, as well as all evidence seized from the search of the vehicle due to the Government's illegal intrusion on Mr. Vantiger's Fourth Amendment rights.

## II.   Facts

On February 10, 2020, Detective Andrew Corral and Sargent Scott Warren of the Pasco Police Department conducted an investigative stop on a 2019 Chrysler 300 rental vehicle traveling northbound on I-82 toward Kennewick, Washington at approximately 3:00 p.m.[1] Mr. Vantiger was a passenger in the vehicle driven by Gloria Gomez.[2] Det. Corral gave Mr. Vantiger and Ms. Gomez a "ruse" of why he stopped them "due to the sensitive investigative information" and told them they had been stopped after receiving a report of erratic driving and possible domestic disturbance.[3]

---

[1] Declaration Geana Van Dessel, Ex. A at 16 ("Van Dessel Decl.")
[2] *Id.*
[3] *Id.*

Motion to Challenge K9 and Suppress - 1

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

Det. Corral's Body Cam footage of the stop recorded the following:[4]

**1:05** Det. Corral says he received a report of a car driving erratically and possible "domestic disturbance"; Ms. Gomez and Mr. Vantiger began to chuckle and Mr. Vantiger says he was sleeping (so the report was wrong).

**1:40** Mr. Vantiger says they were coming from Portland.

**2:15** Det. Corral asks Ms. Gomez to step out of the vehicle and he escorts her to the back of the vehicle. Mr. Vantiger remains in the vehicle with Sgt. Warren standing by the passenger window. Det. Corral tells Ms. Gomez again that they had a report of a possible domestic violence situation and erratic driving. Det. Corral asks Ms. Gomez how she knows Mr. Vantiger, how long they've been dating, where she works, what she and Mr. Vantiger did in Portland, and where they stayed. Det. Corral asks Ms. Gomez if Mr. Vantiger ever assaulted her and she replied "No". Any warrants? "No".

**5:40** Det. Corral returns to his vehicle to run Ms. Gomez's information.

**7:30** Det. Corral gives Ms. Gomez her ID back and tells her she is "good to go, you're clear, so". Yet, he continues to question Ms. Gomez about the trip to Portland. *See* **7:34**

**8:10** Det. Corral walks back to the rental vehicle and instructs Mr. Vantiger to step out. Det. Corral questions Mr. Vantiger about his relationship with Ms. Gomez and their trip to Portland.

**9:42** Det. Corral tells Mr. Vantiger he is being detained while Sgt. Warren handcuffs him. Sgt. Warren also handcuffs Ms. Gomez.
Det. Corral tells Mr. Vantiger that he sees signs of something else going on so he is going to conduct a drug investigation.

**12:25** Det. Corral *Mirandizes* Mr. Vantiger.

**13:00** Det. Corral continues to question Mr. Vantiger.

---

[4] Van Dessel Decl. Ex. D. This video will be available to the Court during the evidentiary hearing unless the Court requests to review it sooner. All timestamps correspond to the minutes and seconds of the timer shown on the lower left corner of the video. They do not correspond to the time of day.

Motion to Challenge K9 and Suppress - 2

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington  99201-0506

**14:15** Det. Corral says, "well, you got a rental car. Do you have any other cars at all?" Mr. Vantiger explains he has a truck but it has a breathalyzer.

**14:28-28:45** Det. Corral and Sgt. Warren continue to detain Mr. Vantiger and Ms. Gomez separately on the side of the road. Ms. Gomez says nothing as Det. Corral repeatedly asks Ms. Gomez if there is anything in the vehicle and tells her he has a drug dog. Det. Corral tells Ms. Gomez he would hate to see her take the rap on something Mr. Vantiger is doing. Ms. Gomez remains silent, standing on the side of the road—handcuffed—while Det. Corral continues to ask her what they are "really up to", where they are coming from, and if she is really going to "take the rap for this."

**25:00** Mr. Vantiger is placed in the back of a patrol car.

**28:00** K9 Ezra is applied to the vehicle.

At approximately 3:30 p.m., Det. Corral applied K9 Ezra to the exterior of the Chrysler 300 rental vehicle. His report says he "started at the front driver's side of the vehicle" when he applied K9 Ezra, but this is contrary to the Dashcam video, which shows Det. Corral starting at the rear passenger side of the vehicle.[5] Det. Corral's report says he observed K9 Ezra start to exhibit changes of behavior that would indicate the presence of the odor of narcotics as they passed counterclockwise around the vehicle. [6]"[K9 Ezra] started to sniff to rear driver's side of the vehicle, and then pulled back towards the front driver's side door."[7] "I observed that her mouth closed and her sniffing and breathing became rapid and shallow."[8] "She then sniffed the driver's side door handle and seam area, and then gave a final indication/alert by 'sitting.'"[9] Det. Corral then walked K9 Ezra away

---

[5] *Cf.* Van Dessel Decl. Ex. A at 17 *with* Ex. D.
[6] Van Dessel Decl. Ex. A at 17-18.
[7] *Id*. at 18.
[8] *Id*.
[9] Van Dessel Decl. Ex. A at 18.

Motion to Challenge K9 and Suppress - 3

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

from the vehicle and re-applied her to the driver's side door area.[10] "She again exhibited the same change of behavior in the same area and then gave a final alert by 'sitting.'"[11]

Mr. Vantiger and Ms. Gomez were detained and transported to the Pasco Police Department station ("Police Station") for further questioning. The vehicle was impounded and also transferred to the Police Station.[12]

Then Det. Corral applied for and was granted a warrant to search the vehicle.[13] The majority of the search warrant declaration was authored by DEA Special Agent Jerel Deitering and contained the following information regarding his investigation of Vantiger over the previous two years:

- Oct. 2018 interview with CD 2 and Nov. 2018 interview with CD 1, but no follow-up or recent interview with either CD before the Feb. 2020 warrant
- Gambling Records of Mr. Vantiger from Jan. 2017 - Jan. 2020
- Employment records of Mr. Vantiger from January 22, 2020
- SnapChat investigation of Mr. Vantiger
- GPS Phone Ping Warrant information
- Information regarding a Facebook posting from profile screenname "Mikey Vantiger" dated February 6, 2020, stating "Someone wanna make some decent cash must have dl and credit card and can be gone from sat until Monday let me know ASAP inbox me for details."
- Surveillance of Mr. Vantiger being picked up from his house on February 8, 2020, by Ms. Gomez, in a white Chrysler 300 – the rental.

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Van Dessel Decl. Ex. A is an unsigned copy of the search warrant. The Government did not provide a copy of the signed search warrant.

Motion to Challenge K9 and Suppress - 4

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

*See* Van Dessel Decl. Ex. A at 3-16. The rest of the declaration by Det. Corral detailed his stop of the vehicle, questioning on scene, and his application of K9 Ezra and her alleged alert.[14] The search warrant of the rental was executed at 5:25 p.m. and it uncovered suspected Fentanyl pills.[15]

While the vehicle was being searched, Mr. Vantiger and Ms. Gomez were held in interrogation rooms at the Police Station. [16] *After* the search revealed suspected Fentanyl pills, officers began to interview Mr. Vantiger at approximately 6:00 p.m.; Mr. Vantiger was not read his *Miranda* rights until approximately 6:08 p.m. and *after*, it appears, he was told what was discovered in the rental; Mr. Vantiger then explained the trip and the pills.[17]

Mr. Vantiger was charged with one count of Possession with Intent to Distribute 400 grams or more of Fentanyl. ECF No. 18.

### III.   Argument

Mr. Vantiger was illegally seized in violation of his Fourth Amendment rights when the car he was riding in was stopped via a ruse and again when he was detained roadside. His Fourth Amendment rights were again violated when the car was subsequently searched without probable cause. The fruits of the illegal actions by law enforcement must be excluded. The Court must exclude Mr. Vantiger's

---

[14] Van Dessel Decl. Ex. A at 16-18
[15] *Id*. Ex. B
[16] *Id*. Ex. L at 2
[17] *See Id*. Ex. L

Motion to Challenge K9 and Suppress - 5

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

statements, Ms. Gomez's statements, and the evidence seized when the car was searched.

### A. The Government did not have reasonable suspicion sufficient to support the investigatory stop, but even if it did, the use of a ruse violated Mr. Vantiger's Fourth Amendment rights.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. A seizure of a person must be supported by probable cause, even if no formal arrest has been made. *Dunaway v. New York*, 442 U.S. 200, 216 (1979). A person is "seized" within the meaning of the Fourth Amendment "when a law enforcement officer, through coercion, physical force, or a show of authority, in some way restricts the liberty of a person.'" *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (citation and internal quotation marks omitted). An investigatory stop, however, is only required by the Fourth Amendment to have a reasonable suspicion based on objective facts that the individual is involved in criminal conduct. *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949). Reasonable suspicion entails "some minimal level of objective justification for making a stop." *United States. v. Sokolow*, 490 U.S. 1, 7 (1989). An officer must have "more than an inchoate and unparticularized suspicion or 'hunch'" but less than the level of suspicion required for probable cause. *Id*.; *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

Here, Mr. Vantiger was seized and detained multiple times. The Government must first prove the officers had reasonable suspicion to support the ruse

Motion to Challenge K9 and Suppress - 6

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

investigatory stop of the vehicle. The stale evidence relied on by the Government cannot be used to support the ruse stop. *See Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968) (explaining that proof the evidence was in the possession of the person or premises at some remote time in the past will not justify a present invasion of privacy of the person). Without that stale evidence, the remaining evidence does not support more than a hunch that Mr. Vantiger was involved in criminal conduct.

Even if the Government had reasonable suspicion to support an investigatory ruse stop, the use of a ruse violated Mr. Vantiger's Fourth Amendment rights and all statements and evidence must be suppressed.

"An otherwise lawful seizure can violate the Fourth Amendment if it is executed in an unreasonable manner," including if it is executed by means of an unreasonable ruse. *United States v. Ramirez*, 976 F.3d 946, 952 (9th Cir. 2020) (internal citations omitted). Although law enforcement may use deceit in certain circumstances, not every ruse is reasonable under the Fourth Amendment. *Id.* (citing *Lewis v. United States*, 385 U.S. 206, 209 (1966) ("The various protections of the Bill of Rights, of course, provide checks upon such official deception for the protection of the individual.")). "The court must assess the reasonableness of law enforcement's use of deception by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 952-953 (internal quotations omitted) (quoting *United States. v. Jacobsen*, 466 U.S. 109, 125

Motion to Challenge K9 and Suppress - 7

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington  99201-0506

(1984)); *see United States. v. Alvarez-Tejada*, 491 F.3d 1013, 1016 (9th Cir. 2007) ("The benchmark for the Fourth Amendment is reasonableness, which requires us to weigh the government's justification for its actions against the intrusion into the defendant's interests.").

"Law enforcement does not have carte blanche to use deception to effect a search and seizure." *Ramirez*, 976 F.3d at 955. "A ruse that reveals the officers' identity as law enforcement but *misrepresents the purpose of their investigation* so that the officers can evade limitations on their authority raises serious Fourth Amendment concerns." *Id.* (emphasis added). This type of deception, which is the deception used on Mr. Vantiger, is illegal.

"Deception is unlawful when the government makes its identity as law enforcement known to the target of the ruse and exploits the target's trust and cooperation to conduct searches or seizures beyond that which is authorized by the warrant or other legal authority, such as probable cause." *Id*. at 952-953. "[S]uch a ruse is unreasonable under Fourth Amendment." *Id.*; *see Alverez-Tejeda*, 491 F.3d at 1017 (stating that courts take a closer look at the reasonableness of the government's use of deception when agents identify themselves as government officials but mislead suspects as to their purpose and authority). "The balance of interests shifts significantly when the government's chosen ruse invokes the public's trust in law enforcement because of the concern that people should be able to rely on [the] representations' of government officials." *Ramirez*, 976 F.3d at 954 (quoting *Alverez-Tejeda*, 491 F.3d at 1017 (internal quotation marks omitted).

Motion to Challenge K9 and Suppress - 8

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

The *Ramirez* Court found the government's use of a ruse to search and seize the defendant violated the Fourth Amendment. 976 F.3d at 959. Although the FBI had a warrant to search the defendant's home, they did not have an important government interest to support lying to the defendant about a burglary at his home to lure him home during the execution of the search warrant so they could bring him and his vehicle within the scope of the warrant. *Id*. 957-959. The *Ramirez* Court balanced the government's justification for its ruse against the intrusion into the defendant's Fourth Amendment interests and found the government's conduct to be "clearly unreasonable." *Id*. 958-959. "The Fourth Amendment interest is near its zenith in this case because the agents betrayed [defendant's] trust in law enforcement in order to conduct searches and seizures beyond what they were lawfully authorized to do." *Id*. 959. And the *Ramirez* Court concluded there was no reason why the agents could not have waited for the defendant to return home on his own accord before executing the warrant. *Id. at* 957.

By contrast, the *Alvarez-Tejada* Court found no Fourth Amendment violation when federal agents used a ruse to seize the defendant's vehicle by staging a carjacking. 491 F.3d at 1017. There, federal agents had probable cause to seize the vehicle and they had a "vital interest" in using the ruse to avoid tipping off the defendant's <u>co-conspirators</u> about their investigation. *Id*. (emphasis added).

Here, prior to the officers' use of a ruse to make the investigatory stop, they did not have probable cause to seize and search the vehicle. Mr. Vantiger disputes that the officers even had reasonable suspicion to conduct an investigatory stop but

Motion to Challenge K9 and Suppress - 9

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington  99201-0506

even if they did, the use of the ruse was unlawful. Det. Corral says he gave Mr. Vantiger and Ms. Gomez a ruse "due to the sensitive investigative information" but provides no further justification or detail. There were no co-conspirators to worry about tipping off, like *Alvarez-Tejeda*, and there was no vital interest requiring use of a ruse to make the stop. Further, the use of the ruse tricked Ms. Gomez and Mr. Vantiger into openly communicating with officers in an effort to dispel the suspicion that they had been involved in a domestic disturbance while driving. Law enforcement's betrayal of Mr. Vantiger's trust to conduct a seizure without probable cause is clearly unreasonable. Absent authority to seize the vehicle and Mr. Vantiger, and absent any vital interest justified a ruse, the ruse violated Mr. Vantiger's Fourth Amendment rights. All evidence and statements must be suppressed.

**B.    The Government did not have probable cause to detain Mr. Vantiger and Ms. Gomez or to search the vehicle.**

    **1.    Only reliable K9 alerts can support probable cause.**

Probable cause exists when at the time of the arrest, officers conclude there is a "fair probability that the suspect had committed a crime" based on the totality of circumstances. *United States v. Mills*, 280 F.3d 915, 920 (9th Cir. 2002). An arrest is also supported by probable cause when officers have "reasonably trustworthy information" that would lead a "prudent person" in believing that the person being arrested was committing an offense. *United States v. Del Vizo*, 918 F.2d 821, 825-826 (9th Cir. 1990).

Motion to Challenge K9 and Suppress - 10

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington  99201-0506

To establish probable cause to believe illegal drugs are present using the report of a drug detection K9, the K9's alert must be reliable. *Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005). That question depends on "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013). "Evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id*. at 246. "The better measure of a dog's reliability comes away from the field, in controlled testing environments." *Id*. "[E]ven assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Id*. at 247.

A defendant must have an opportunity to challenge evidence of a dog's reliability whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. *Id*. "The defendant may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty." *Id*. "The defendant may examine how the dog or handler performed in the assessments made in those settings." *Id*. Here, Mr. Vantiger requests an evidentiary hearing to cross-examine Det. Corral and to call his own expert to show K9 Ezra's alert was not reliable and therefore cannot be used to support probable cause.

Motion to Challenge K9 and Suppress - 11

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

### 2. Because K9 Ezra's alert was not reliable, it cannot be used to establish probable cause to detain Mr. Vantiger or to search the vehicle.

Mr. Vantiger's K9 expert Jerry Potter has over 25 years of experience with canines and handlers.[18] In this case, he examined the training and certification records of K9 Ezra, Pasco Police Department Canine Procedures Manual, the training reports of Det. Corral and K9 Ezra, investigative reports from the stop of the vehicle and the body cam and dashcam video recordings of K9 Ezra's sweep of the vehicle.[19] Mr. Potter will testify how K9 Ezra's behavior and his handler's actions during the sweep prove K9 Ezra's alerts were not reliable. Mr. Potter will also testify that K9 Ezra's alerts were unreliable because K9 Ezra was not properly trained.  These opinions are outlined in his summary report at ECF No. 75-1. Therefore, K9 Ezra's alerts cannot be trusted to support probable cause for Mr. Vantiger's detention or the search of the vehicle.

### 3. Mr. Vantiger was illegally detained in violation of his Fourth Amendment rights because no probable cause existed without the K9 alert.

Mr. Vantiger was seized when he was handcuffed, when he was *Mirandized*, and when he was transported to the Police Station and placed in an interrogation room where he waited for hours for subsequent questioning by law enforcement after they completed the search of the rental vehicle. But because the K9 alert was unreliable and invalid, it cannot be used to assess whether the Government had

---

[18] *See* Mr. Potter's curricula vitae attached to his report filed with Defendant's Notice of Intent to Use Expert Testimony, ECF No. 75.
[19] *See* ECF No. 75-1 at 2-5.

Motion to Challenge K9 and Suppress - 12

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

probable cause to seize Mr. Vantiger. Without the K9 alert, probable cause did not exist. *Del Vizo*, 918 F.2d at 825 (stating probable cause exists when officers have "reasonably trustworthy information" that the person being arrested *was* committing an offense).

Det. Corral admits he conducted an investigatory stop of the vehicle in which Mr. Vantiger was a passenger based on the "request" of DEA investigators.[20] After they seized Mr. Vantiger, Det. Corral applied for a search warrant of the vehicle, which was based on all the same evidence to support the investigatory stop. That evidence was insufficient to support reasonable suspicion, but even if it was, it was wholly insufficient to establish probable cause to search the vehicle.

Prior to the investigatory stop and the K9 alert, the agents had their suspicions about the purpose behind Mr. Vantiger's trip. The agents' choice to recruit help from a K9 handler to conduct the investigatory stop confirms the agents knew they needed something more to establish probable cause to search the vehicle. That something more was a K9 alert.

Although a valid, reliable K9 alert is enough to establish probable cause to obtain a search warrant, here the K9 alert was invalid and unreliable, and therefore insufficient to support probable cause. Without the alert, the agents had nothing more than a series of leads that had not turned up enough evidence to establish probable cause at the time they stopped the vehicle. If the agents thought they had

---

[20] Van Dessel Decl. Ex. A at 16.

Motion to Challenge K9 and Suppress - 13

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

probable cause without the K9 alert, they would have obtained an arrest warrant and a warrant to search the vehicle, *before* the investigatory stop. They did not. The agents knew they needed the K9 alert to establish probable cause to seize Mr. Vantiger and support a warrant to search the vehicle. Without a reliable K9 alert, there was no probable cause to seize Mr. Vantiger, and thus, he was illegally detained in violation of his Fourth Amendment rights.

**C.    Mr. Vantiger's statements after his illegal seizure must be excluded as fruits of the illegal detention.**

Evidence obtained through a violation of the Fourth Amendment should be excluded from trial as fruits of the illegal detention. *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963). This exclusionary rule applies both to direct products of a Fourth Amendment violation and to indirect products of the illegal search if they "bear a sufficiently close relationship to the underlying illegality." *United States v. Ladum*, 141 F.3d 1328, 1336 (9th Cir. 1998). The exclusionary rule extends to a defendant's statements obtained by exploitation of law enforcement's illegal conduct in violation of the Fourth Amendment. *Dunaway*, 442 U.S. 200, 217 (1979). The central issue is the "causal connection" between law enforcement's illegal conduct and the statements. Where "there is a close causal connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future but use of the evidence is more likely to compromise the integrity of the courts." *Id.* at 218.

Motion to Challenge K9 and Suppress - 14

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

The test for whether a defendant's statements must be suppressed under the Fourth Amendment are two-fold: (1) the defendant's consent to speak with law enforcement must have been voluntary, and (2) even if his decision to speak with law enforcement was voluntary, his consent must have been "sufficiently an act of free will to purge the primary taint" of the illegal conduct that preceded his statements. *Washington*, 490 F.3d at 774.

*Miranda* warnings are an important factor in determining whether the confession is obtained by exploitation of an illegal arrest. *Brown v. Illinois*, 422 U.S. 590, 604 (1975). "[A]lthough a confession after proper *Miranda* warnings may be found 'voluntary' for purposes of the Fifth Amendment, this type of 'voluntariness' is merely a 'threshold requirement' for Fourth Amendment analysis." *Dunaway*, 442 U.S. at 216-17 (quoting *Brown*, 422 U.S. at 604). *See*, e.g., *United States v. Shetler*, 665 F.3d 1150, 1159 (9th Cir. 2011) (excluding the defendant's statements even though *Miranda* warnings had been given three times before defendant's confession but *after* the illegal conduct by law enforcement because "such warnings are insufficient to purge the taint of a temporally proximate prior illegal act"). "In order for the causal chain, between illegal arrest and statements made subsequent thereto, to be broken[,] [it is] require[d] not merely that the statement meet Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint." *Brown*, 422 U.S. at 602 (internal quotations marks omitted) (quoting *Wong Sun.*, 371 U.S. at 486). To determine whether there was an act of free will sufficient to purge the taint, the

Motion to Challenge K9 and Suppress - 15

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington  99201-0506

Ninth Circuit courts consider three factors: (1) the temporal proximity between the arrest and the confession; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 603-604. The focus of these factors is the "causal connection" between the illegal detention. *United States v. Johnson*, 626 F.2d 753, 758 (1980).

The first two factors, "temporal proximity" and "the presence of intervening circumstances," clearly pertain to the determination of whether the defendant supplied the evidence of his own free will, apart from any compulsion caused by the illegal detention. *Id*. For the third factor, some courts afford only brief consideration to the "purpose and flagrancy" factor in the case. *Id*. (applying the exclusionary rule even though "the conduct of the police was not especially flagrant").

Mr. Vantiger's statements at the Police Station were obtained through the exploitation of law enforcement's illegal conduct and should be suppressed. To determine whether there was an act of free will sufficient to purge the taint, this Court considers three factors: (1) the temporal proximity between Mr. Vantiger's arrest and his confession; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 603-604.

Consideration of the first two factors shows there was no act of free will sufficient to purge the taint. Mr. Vantiger was handcuffed and transported to the Police Station and placed in an interrogation room, where he waited two hours until he was confronted with the drug evidence discovered as a result of the search

Motion to Challenge K9 and Suppress - 16

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington  99201-0506

of the vehicle. There were no intervening circumstances between the time of Mr. Vantiger's illegal detention and his statements *after* he learned about the drug evidence seized in violation of his Fourth Amendment rights. That evidence was used to secure Mr. Vantiger's statements. *Miranda* warnings were insufficient to purge the taint of the illegal conduct because once Mr. Vantiger was confronted with evidence of the drugs, Mr. Vantiger was compelled to confess to agents information they already knew.

In analyzing the third factor, the Court considers the purpose and flagrancy of Mr. Vantiger's seizure based on an unreliable K9 alert that did not establish probable cause. This was a flagrant violation of Mr. Vantiger's basic constitutional rights. The close causal connection between the illegal detention and the statements obtained from Mr. Vantiger is apparent from consideration of the temporal proximity, the lack of intervening circumstances, and the flagrancy of the conduct. Mr. Vantiger's statements should be suppressed (as well as Ms. Gomez' statements).

**D. Without K9 Ezra's alert, the search warrant for the vehicle is not supported by probable cause and all evidence obtained from the search must be excluded.**

Evidence obtained as a result of searches conducted under the authority of warrants lacking in probable cause must be excluded. *Weeks v. United States*, 232 U.S. 383 (1914). Although valid portions of a search warrant may be severed from the invalid portions and the search made pursuant to the valid portions upheld, severance is not available when the valid portion of the warrant is "a relatively

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington 99201-0506

insignificant part" of an otherwise invalid search. *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir.1986).

Here, there was no probable cause without K9 Ezra's alert. And once the Court severs K9 Ezra's unreliable alert from the search warrant declaration, the information remaining does not establish probable cause that evidence of criminal activity would be found in the vehicle. Without probable cause, the court must suppress all evidence discovered from the search of the vehicle.

## IV.    Conclusion

The Government violated Mr. Vantiger's Fourth Amendment rights when law enforcement used an illegal ruse to stop and seize him, and again when they relied on an unreliable K9 alert to support probable cause to detain him and search the vehicle. The Court should suppress all statements made by Mr. Vantiger and Ms. Gomez to law enforcement and all evidence seized from the search of the vehicle.

Respectfully submitted January 4, 2021.    KUTAK ROCK LLP

By: s/ Geana M. Van Dessel
Geana M. Van Dessel, WSBA #35969
510 W. Riverside Ave., Suite 800
Spokane, WA 99201
(509) 252-2691
Geana.VanDessel@kutakrock.com

Attorneys for Defendant Michael Vantiger

Motion to Challenge K9 and Suppress - 18

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington  99201-0506

# CERTIFICATE OF SERVICE

I certify that on January 4, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF specifically identifies recipients of electronic notice.

s/ Geana M. Van Dessel
Geana M. Van Dessel, WSBA #35969
KUTAK ROCK LLP
510 W. Riverside Ave., Ste. 800
Spokane, WA 99201
(509) 747-4040
Geana.VanDessel@KutakRock.com

Attorney for Defendant Michael Van Tiger

Motion to Challenge K9 and Suppress - 19

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue
Suite 800
Spokane, Washington  99201-0506